**FILED**
**JUNE 21, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 37277-4-III |
| | ) | |
| TRACIE BROWN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| MICHAEL KEITH BROWN, | ) | |
| | ) | |
| Respondent. | ) | |

PENNELL, J. — Tracie Brown appeals from a final divorce order that divided business assets held by her and her former husband, Michael Brown. We affirm the trial court and assess counsel for Ms. Brown $250 in sanctions for failing to comply with RAP 10.3(a)(5).

FACTS

Tracie and Michael Brown were married in 1988. On December 31, 2013, Ms. Brown filed for divorce, citing the marriage as "irretrievably broken." Clerk's Papers (CP) at 70-71. The marital community's assets included four business interests:

(1) 50 percent stock ownership in Brown Boys, Inc. (the car business), (2) 50 percent ownership of the land and buildings occupied by Brown Boys, Inc., (3) 50 percent stock ownership in Brown Brothers, Inc. (the tavern), and (4) 50 percent ownership of the land and buildings occupied by Brown Brothers, Inc. The remaining 50 percent of the business and land interests was owned by Michael Brown's brother.

In 2015, Ms. Brown moved for an order directing Mr. Brown to pay for an expert to appraise the parties' businesses. The court granted the motion and ordered Mr. Brown to pay $8,000 for a "joint business valuator with ABV [accredited business valuation] credentials to value the community's interest in the businesses." CP at 155. Counsel were further ordered to confer on an expert who would work "for the community." *Id*. A business valuation report for the car business was obtained. The report valued the business on its own, not the land on which the business sat or the buildings situated on the land. Prior to trial, Mr. Brown had paid only $3,000 of the outstanding fees of the business valuator.

The parties' dissolution action proceeded for approximately six years before going to trial. During this time, the parties were represented by various attorneys. By the time the case went to trial in November 2019, Ms. Brown represented herself and Mr. Brown was represented by counsel.

At trial, Mr. Brown moved to admit the joint business valuation report into evidence, pursuant to the parties' agreement. Ms. Brown did not object. The report stated the car business's value was $419,718 as of December 31, 2013. The report did not address the value of the land or buildings occupied by the car business.

During opening statement, Mr. Brown's attorney explained Mr. Brown had paid $3,000 of the business valuation fees and stated he expected the remainder of the fees to be included as the husband's debt in the final dissolution order. Counsel for Mr. Brown explained he did not intend to call the author of the business valuation report to testify at trial because he did not think the author was a necessary witness. Counsel also explained that while Mr. Brown was introducing the business valuation report into evidence, he did not agree with the report's final assessment because it did not account for business debt.

The primary witnesses at trial were the Browns. The only additional witness was Ms. Brown's roommate, David Meckelson, who testified as to Ms. Brown's financial and living circumstances at the time of trial.

During her examination of Mr. Brown, Ms. Brown asked if the reason he had not paid the full business valuation fee was because Mr. Brown did not want the report's author to testify at trial. Mr. Brown answered, "No, that's not true." Report of Proceedings (RP) (Nov. 4, 2019) at 93.

3

After the presentation of testimony, the parties agreed the evidence was closed and

they were ready for summation. During summation, Ms. Brown urged the court to order

certified appraisals of the family home, as well as the real property occupied by the car

business and the tavern. The only appraisals that had been offered into evidence has been

created at the time of separation. Alternatively, Ms. Brown asked for her share of the

profits from the two businesses for the six years that the parties had been separated

pending dissolution of the marriage. Ms. Brown said she would "accept $50,000 per year"

for the last six years. RP (Nov. 6, 2019) at 412. Ms. Brown also objected to Mr. Brown's

disagreement with the conclusions reached in the joint business valuation report.

According to Ms. Brown, Mr. Brown was not in a position to object to the contents of the

report since he had the opportunity to pay the outstanding balance to the report's author

and ask for a correction.

The trial court issued a written decision dividing the parties' assets. With respect to

the 50 percent interest in the car business, the trial court reduced the $419,718 valuation

to $300,000 based on unaccounted debts and reliability problems. This was awarded to

Mr. Brown, along with the 50 percent interest in the real property, valued at $16,047.

With respect to the 50 percent interest in the tavern, the court settled on a valuation of

$220,000 based on Ms. Brown's testimony.[1] This was awarded to Ms. Brown along with a 50 percent interest in the real property, valued at $47,066.

The court's final property distribution favored Ms. Brown, as it resulted in a 60/40 split of net assets. In addition to property distribution, the court awarded a transfer payment from Mr. Brown to Ms. Brown of $50,000.

Ms. Brown timely appeals.

## ANALYSIS

Mr. Brown contends Ms. Brown's opening appellate brief violates the terms of RAP 10.3(a)(5). Ms. Brown has not filed a reply brief or responded to this argument. We agree with Mr. Brown.

*Requirements of RAP 10.3(a)(5)*

RAP 10.3 governs the content of briefing on appeal. Under RAP 10.3(a)(5), the opening brief of an appellant or petitioner must contain a statement of the case that includes a "fair statement of the facts and procedure relevant to the issues presented for review, without argument. Reference to the record must be included for each factual statement."

---

[1] There was no formal written valuation of the tavern business.

An important aspect of RAP 10.3(a)(5) is the requirement of precise citation to the record. The record on review is often long and includes materials extraneous to the issues on appeal. Fair adjudication of an appeal requires this court to be able to pinpoint the parties' factual disputes in the record. The responsibility for providing accurate record citation falls on the parties, not the court. *Mills v. Park*, 67 Wn.2d 717, 721, 409 P.2d 646 (1966) (The court is "not required to search the record for applicable portions thereof in support of the [appellant's] arguments.").

Another important component of RAP 10.3(a)(5) is a statement of the case must be made "without argument." Objectively adjudicating a dispute on review requires first assessing what happened during the trial court proceedings and then critiquing what happened for legal error. An argumentative statement of the case muddies this analytical process and is unhelpful to the steps this court must take to resolve the parties' dispute. This is especially true if an argumentative statement of the case is accompanied by imprecise citation to the record.

RAP 10.3(a)(5) also requires a party's statement of the case to be "fair." This requirement speaks to the need for accuracy. The statement of the case is the foundation on which the remainder of a brief is based. If the factual foundation of a brief is faulty, the rest will crumble.

The requirements of a precise, nonargumentative, and fair statement of the case does not mean a party's briefing must be dry and unpersuasive. Parties can and should present the record in a compelling manner, focused on the facts necessary to decide the issues on review. The best appellate briefs are ones that organize their statements of the case in a way that anticipates presentation of the issues on review and emphasizes the aspects of the record supporting the party's case. But an appellate advocate will lose credibility, and undermine the justness of their cause, by overstating or misrepresenting the factual underpinnings of the dispute on appeal.

*Ms. Brown's brief does not meet the requirements of RAP 10.3(a)(5)*

Ms. Brown's appellate brief fails to comply with the aforementioned requirements of RAP 10.3(a)(5).

Ms. Brown's brief does not include precise citation to the record. The report of proceedings in this case totals 445 pages. Ms. Brown's statement of the case includes 12 references to the report of proceedings. Only three of these references cite a single page. Two references cite ranges of 3 pages. The remainder of the references cite ranges anywhere from 9 to 213 pages. Ms. Brown's broad citation to the record includes instances in which she makes controverted factual and procedural claims. Ms. Brown's

imprecise citation to the record is no more helpful than a brief completely devoid of citation. This alone violates RAP 10.3(a)(5).

In addition to imprecise citation to the record, much of Ms. Brown's statement of the case is argumentative. Counsel spends a lot of time in the statement of the case critiquing the conduct of the parties and the trial judge. For example, counsel repeatedly praises Ms. Brown for seeming to do a good job presenting her case at trial and making appropriate requests. Appellant's Opening Br. at 2-4. Meanwhile counsel criticizes the trial court for blaming the parties for holes in the record and failing to recognize the importance of having expert testimony. *Id*. at 4-5. Editorial comments on the meaning of various things said and done during trial fall outside the bounds of a statement of the case. They are unhelpful to this court's resolution of this appeal.

Finally, and most critically, Ms. Brown's statement of the case fails to provide a "fair" statement of what happened at trial. Two aspects are salient.

First, Ms. Brown claims the trial court "ordered" the author of the business valuation report to "participate in the trial" but the author did not do so "because Mr. Brown" did not pay the author's fee bill. *Id*. at 3. This representation is false. The trial court never ordered the report author to be a witness or otherwise participate at trial. The court merely required Mr. Brown pay $8,000 of the bill for the report. In

addition, the record does not support counsel's claim that the report author failed to testify because he had not been paid. When Ms. Brown asked Mr. Brown about this issue during trial, Mr. Brown denied it was true. Mr. Brown and his attorney repeatedly explained they did not call the report author to testify because they did not think his testimony was necessary. Nothing in the record contradicts this position. Nor is there any suggestion Ms. Brown was prevented from calling the report author to testify, had she wanted to do so.

Second, Ms. Brown's counsel asserts that, at the end of trial, Ms. Brown asked for a continuance so Mr. Brown could pay the report author, thereby allowing the author to provide testimony regarding the value of the car business. Appellant's Opening Br. at 4-5. Again, this claim is false. Ms. Brown never asked for more time to have an additional assessment of either the car business or the tavern. The only thing Ms. Brown asked for at the end of trial was additional time to have certified appraisals of real property, including the parties' home and the land and buildings occupied by the parties' family businesses.

*Noncompliance with RAP 10.3 is fatal to the claim on appeal*

Ms. Brown's substantive claim on appeal is that the trial court failed to fairly adjudicate the value of the car business because the court did not account for the business's goodwill value. Ms. Brown claims she was prevented from developing the

record in this regard because of Mr. Brown's intransigence and the trial court's refusal to grant a continuance.

Ms. Brown's substantive claim fails because it rests on an inaccurate statement of the case. Nothing in the record indicates Ms. Brown was prevented from calling the business valuation report author as a witness at trial in order to present evidence of goodwill value. Nor did Ms. Brown ask for a continuance for this purpose. The record on review shows Ms. Brown agreed the business valuation report could be admitted into evidence as is, without the need for live testimony. At trial, Ms. Brown's only complaint about the report was that the court failed to accept it at face value and instead adopted a reduced business valuation.

Because Ms. Brown never preserved any arguments in the trial court regarding the substance of the business valuation report, we decline under RAP 2.5(a) to address the arguments on appeal. Although counsel for Mr. Brown has not requested sanctions, we impose sanctions on our own initiative under RAP 10.7 and RAP 18.9(a) based on appellant counsel's failure to comply with RAP 10.3(a)(5), as set forth above.

CONCLUSION

The trial court's final divorce order is affirmed. Counsel for Ms. Brown is assessed $250 in sanctions under RAP 10.7 and RAP 18.9(a), payable to this court, based on a failure to comply with RAP 10.3(a)(5).

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Fearing, J.

_____
Staab, J.